### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CATALINA BLANCO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1591 |
| | § | |
| SELECT SPECIALTY HOSPITAL | § | |
| HOUSTON, L.P., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Catalina Blanco, through her representative Hortencia Sanchez, seeks a temporary restraining order ("TRO") in her suit against Select Specialty Hospital Houston, L.P. ("Select").  (Docket Entries No. 1, 2).  Blanco's federal-court suit arises from a suit filed against her in the 151st District Court of Harris County, Texas, *Select Specialty Hospital-Houston, L.P. v. Catalina Blanco*, Cause No. 2013-29850.  Blanco asks this court to issue a TRO enjoining the Texas state court from enforcing the TRO it has entered.  Based on the pleadings, the motion, and the relevant law, the request for a TRO from this federal court is denied.  The reasons are explained below.

### I.      Background

Both the state-court and the federal-court suits concern Blanco's status as a patient at Select. Blanco is insured through Medicare.  She was admitted to Select's long-term acute-care hospital facility for treatment.  She suffers from pneumonia, diabetes, a pressure ulcer, and hypertension. Sanchez, Blanco's daughter, has a power of attorney and makes medical decisions for Blanco. (Docket Entry No. 1, ¶ 6).

On May 9, 2013, while Blanco's treating physician was on vacation, another Select physician

recommended that she be discharged to a lower-level care facility because she was not benefitting from Select's more intensive level of treatment.  Select provided Sanchez with a "detailed Notice of Discharge" detailing Blanco's rights and options on discharge, including the right to appeal to Medicare and request an independent medical review.  (*Id.*, ¶ 7).

Blanco, through Sanchez, appealed her discharge to TMF Health Quality Institute ("TMF"). TMF is a nonprofit organization unaffiliated with Select.  TMF is authorized by Medicare as the quality improvement organization ("QIO") for Texas.  TMF reviews medical care and services provided to Medicare beneficiaries.  (*Id.*)  On May 10, 2013, TMF agreed with the Select physician that Blanco should be treated at a lower-level care facility.  (*Id.*)  On May 13, 2013, TMF conducted a second medical review and again determined that Blanco should be discharged from Select and treated at a lower-level care facility.  (*Id.*)

On May 17, 2013, Sanchez received a letter from TMF stating the reason for denial and explaining the process for further appeal.  (*Id.*, Ex. A).   This letter also explained:

> As you/your representative were notified, the Medicare program will not pay for services that are not medically necessary; therefore, Medicare will not pay the hospital for the services beginning May 12, 2013 at 12 noon.  **You are responsible for payment of all charges as stated above.**

(*Id.* at 2 (emphasis in original)).  Sanchez told Select's CEO, Mitali Paul, and Blanco's Case Manager, Shakoor Salahuddin, that she did not agree with the second review and that Blanco was appealing and seeking a hearing with an administrative law judge ("ALJ"), the next step in the appeal process.

With Medicare no longer paying for Blanco's stay at Select, and Blanco's refusal to accept transfer to a lower-level care facility, Select filed suit against Blanco in Texas state court to require

2

her to accept the discharge and transfer.  On May 21, 2013, the state court issued a TRO that provided as follows:

> ORDERED that Defendant Catalina Blanco and her representatives, agents, servants, employees, and attorneys and all persons acting in concert or participation with her who receive actual notice of this order by personal service or otherwise, including Hortencia Sanchez, are hereby commanded to do the following:
>
> a.    Immediately gather her belongings and exit, leave, and remove herself from the premises of the Specialty Select Hospital . . . ; or
>
> b.    Immediately consent to a transfer to a skilled nursing facility that will accept Blanco for treatment and cooperate with Specialty Select in its efforts to transfer Blanco to the facility . . . .

(Docket Entry No. 1, Ex. B).  The state court set a hearing for May 31, 2013 ordering Blanco, through Sanchez, to show cause why a temporary injunction should not be issued.  (*Id.*)

On May 28, 2013, Blanco, through Sanchez, filed suit in this court.  (Docket Entry No. 1). She alleged that Select has violated her 14th Amendment due process rights by seeking to remove her from the Select hospital facility before the Medicare appeals process was completed.  (*Id.*, ¶ 8). She also alleged that Select violated Medicare regulations and "the contract with Medicare" by not allowing Blanco to exhaust the administrative-review process.  (*Id.*, ¶¶ 9–10).  Blanco seeks a permanent injunction against Select and several of its employees and representatives (1) to stop threatening to have Blanco and/or Sanchez held in contempt of the state court's order; (2) to bar removal of Blanco from the Select facility until she has completed all five levels of administrative review; (3) to stop threatening to have Sanchez's power of attorney revoked; and (4) to cancel and revoke immediately the state court's TRO.  (*Id.*, ¶ 11).

On May 28, 2013, Blanco, through Sanchez, also moved for a TRO.  (Docket Entry No. 2). She asks this court to order Select and its representatives (1) to let the Medicare appeal run its course before attempting to remove Blanco from the Select facility; (2) to cancel and revoke the state-court

TRO; and (3) to stop pursuing contempt penalties against Blanco and/or Sanchez for failing to comply with the state-court TRO.

## II.     The Legal Standard for a TRO

To obtain a preliminary injunction, a plaintiff must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an 'extraordinary remedy' and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Planned Parenthood of Houston & S.E. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (internal quotation marks and citation omitted).

## III.    Analysis

This court cannot enter the requested TRO because it essentially requires enjoining the ongoing state-court proceeding. "'The Anti–Injunction Act generally prohibits federal courts from interfering with proceedings in state court.'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 (5th Cir. 2008) (quoting *Vines v. Univ. of La.*, 398 F.3d 700, 704 (5th Cir. 2005) (citing 28 U.S.C. § 2283)). The statute states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The statute is strictly construed, and only the three exceptions contained in the text are recognized. *See Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286–87 (1970); *Health Net*, 534 F.3d at 493;

*Vines*, 398 F.3d at 704. "'Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately th[e Supreme] Court.'" *Health Net*, 534 F.3d at 494 (quoting *Atlantic Coast Line*, 398 U.S. at 287). The plaintiffs have made no attempt to show why the TRO they seek falls under one of the three exceptions. In light of that fact, this court has no ability to provide the requested relief.

There is an additional problem with the TRO sought in this court. A critical requirement for issuing a TRO or injunction is a showing of irreparable harm if the order is not entered. The Supreme Court has emphasized that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). When, as here, the state court will provide a forum for considering their constitutional arguments, that provides an available remedy that undercuts the need for an injunction to prevent the state court from pursuing the litigation. *Cf. Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 216 (5th Cir. 1998) (en banc) ("Under our federal constitutional scheme, the state courts are assumed to be equally capable of deciding state and federal issues."), *rev'd on other grounds*, 526 U.S. 574 (1999); *see also Harris Cnty. Dep't of Educ. v. Harris County*, 2012 WL 3886427, at *8 (S.D. Tex. Sept. 6, 2012) ("The harm that [the plaintiff] seeks to prevent — avoiding future questions to its decisions based on challenges to the board composition — is also speculative. And an alternative remedy is available that . . . is better suited to the nature of the claim at issue here. That remedy is a state-court election challenge. The availability of that remedy further undercuts the presence of irreparable harm to the [plaintiff] if the relief it seeks is not granted.").

The plaintiffs' motion for a TRO is denied.

5

**IV.** **Conclusion**

The plaintiffs' motion for a TRO is denied.

SIGNED on May 31, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge